TRINA A. HIGGINS, United States Attorney (#7349)
CARL D. LESUEUR, Assistant United States Attorney (#16087)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | :     Case No. 2:22-cr-00135 (CW) |
| v. | : |
| | : |
| **MICHAEL LEE HARDIN,** | : |
| | : |
| Defendant. | : |

### GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO HAVE PROBATION TERMINATED

On January 6, 2021, while legislators gathered to certify the results of the 2020 election, Defendant Michael Lee Hardin joined a group who, as he described it, "stormed the Capitol." Defendant, who is a former police detective, observed tear gas, plumes of smoke, rioters scaling walls, and broken glass, but advanced to the Capitol undeterred. After unlawfully entering and proceeding to the Rotunda, he cheered and clapped as he watched members of a mob overcome officers attempting to prevent their entry. In connection with his conduct on January 6, defendant pleaded guilty to a misdemeanor. The District Court sentenced him to 30 days' house arrest and 18 months' probation.

Having completed less than 15% of his probation term, Defendant moves to terminate probation. ECF No. 8 (hereinafter "Motion" or "Mot"). In support, he argues that (1) he "just" entered the Capitol and took a picture with President Lincoln; (2) any opposition would be "merely for political reasons"; (3) he would like to possess a firearm; and (4) he would like to pursue a yet-

1

to-be-determined law enforcement job in a yet-to-be-determined location outside of Utah. (*Id.* at ¶¶ 3, 4, 9.) The United States respectfully submits that those are insufficient reasons to disturb the district court's reasoned sentence. Defendant presents no new information or unforeseen circumstances. Defendant's requested termination of probation would undermine due respect for the law and lead to undue sentencing disparity. For instance, his mother-in-law, Janet Buhler, who entered the Capitol at his prompting, was sentenced to 30 days' incarceration and 36 months' probation. *See United States v. Janet West Buhler*, No. 1:21-cr-00510-CKK, ECF No. 39 (D.D.C.). His motion should be denied.

## I.     FACTUAL BACKGROUND

On January 6, 2021, defendant, a former homicide detective for the Salt Lake City Police Department, and his mother-in-law, Buhler, entered the United States Capitol at approximately 2:25 p.m.—just twelve minutes after rioters wielding weapons and stolen riot shield shattered the windows and climbed inside the building. *See United States v. Michael Lee Hardin*, Case No. 21-cr-280-TJK, ECF No. 35, at 3 (D.D.C.) (hereinafter "Gov't Sentencing Mem."). Defendant and Buhler came to the Capitol grounds after briefly attending a rally in support of then-President Trump at the Ellipse. *Id.* Upon approaching the Capitol building, defendant and Buhler smelled tear gas and saw plumes of smoke in the air. *Id.* They also saw rioters climbing the scaffolding erected over the northwest staircase for the inauguration.

Upon entering the Capitol, defendant and Buhler saw shards of glass on the ground. *Id.* Indeed, rioters were still climbing through broken windows when defendant and Buhler entered the building. *Id.* at 3-4. Defendant and Buhler walked south toward the Crypt, where defendant took a picture posing next to a bust of Abraham Lincoln. *Id.* at 4. Defendant and Buhler spent approximately six minutes inside the Crypt before walking upstairs to the Rotunda. *Id.* at 5. They

briefly walked through the Rotunda and exited into the East Rotunda lobby, where they watched for three minutes as rioters violently assaulted and physically crushed officers guarding both sides of the East Rotunda doors to the Capitol.  As recorded in open-source videos of this violent incident, rioters standing mere steps away from defendant and Buhler were shouting, "Get out the way," "Our House," and "Your life is not worth it.  You're going to die.  Get out the way!"  In USCP surveillance footage of this incident, defendant and Buhler are seen cheering and clapping the moment the rioters overcame the officer and breached the East Rotunda doors.  *Id.* at 6.

After witnessing the mob assault first-hand and at close range, defendant did not attempt to leave the building.  Instead, he and Buhler walked upstairs to the third floor of the Capitol building and entered the Senate Gallery for approximately two minutes.  *Id.* at 9.  Defendant and Buhler were two of just a handful of rioters to enter the Senate Gallery that day.  *Id.* at 9.  After wandering the hallways for a couple more minutes, defendant and Buhler eventually exited the Capitol building at 2:53 p.m.  *Id.* at 11.

Later that evening, Hardin sent text messages and photographs of himself inside the Capitol to friends and family members, including messages that said, "We stormed the Capitol.  I am in here now!"; "I know you don't like Trump, but He is the rightful President"; and "We will return until we win!"  *Id.*  During an interview with FBI agents, Hardin claimed that despite his two decades of police service, he did not realize he had broken the law on January 6 or that he would have needed to pass through security in order to enter the Capitol.  *Id.*

II.     **PROCEDURAL BACKGROUND**

Defendant was arrested on April 2, 2021, based on a criminal complaint alleging violations of 18 U.S.C. §§ 1752(a)(1) and (a)(2) (Knowingly Entering or Remaining and Engaging in Disorderly and Disruptive Conduct in a Restricted Building or Grounds), both Class A

misdemeanors; and 40 U.S.C. §§ 5104(e)(2)(D) and (G) (Disorderly Conduct and Parading, Demonstrating, or Picketing in a Capitol Building), both Class B misdemeanors. *Hardin*, Case No. 21-cr-280-TJK. ECF Nos. 1 & 5 (D.D.C.). An information was filed charging defendant with the aforementioned offenses on April 5, 2021. *Id.* ECF No. 7.

On January 21, 2022, defendant pleaded guilty pursuant to a plea agreement to one count of 40 U.S.C. § 5104(e)(2)(G): Parading, Demonstrating, or Picketing in the Capitol Building, a Class B misdemeanor. *Id.* ECF Nos. 27-29. On April 4, 2022, the government filed its sentencing memorandum requesting a sentence of 45 days' incarceration, 36 months' probation, 60 hours of community service, and $500 in restitution for defendant. *See* Gov't Sentencing Mem.

On April 14, 2022, the Honorable Timothy J. Kelly of the District of Columbia sentenced defendant to 30 days' home detention, 18 months' probation, 60 hours of community service, and $500 restitution. D.D.C. ECF No. 44. At sentencing, Judge Kelly also transferred supervision and jurisdiction over the case to the District of Utah. *Id.* In handing down his sentence, Judge Kelly admonished defendant of the seriousness of what transpired on January 6:

> . . . [W]hat you cannot do under any circumstances is become part of a mob, even a small part of a mob, that uses violence and the threat of even more violence to disrupt Congress's ability to carry out its constitutional duty to certify the Electoral College vote for president, but as crazy as it may seem to you sitting here today, that's what you did and many other people did. There's nothing patriotic about it, and no matter how much any of us might not like the way the process of electing the president is proceeding, it's something we just can't do.

Transcript of Sentencing at 42:5-15, *United States v. Michael Lee Hardin*, Case No. 21-cr-00280-TJK, ECF No. 48 (D.D.C).

On June 1, 2022, the Honorable Colleen Kollar-Kotelly of the District of Columbia sentenced Buhler to 30 days' incarceration followed by 36 months' probation and $500 in

restitution for her conviction for engaging in the same conduct as defendant. *United States v. Janet West Buhler*, Case No. 21-cr-00510-CKK, ECF No. 39 (D.D.C.).

On July 19, 2022, after completing only 15% of his probationary sentence, defendant filed the instant Motion seeking early termination of his 18-month term of probation.

### III.    LEGAL AUTHORITIES

Pursuant to 18 U.S.C. § 3564(c), a court has discretion to terminate a term of probation imposed in a misdemeanor case at any time "if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice." 18 U.S.C. § 3564(c). In making this determination, the Court must consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. *Id.; see generally United States v. Hartley*, 34 F.4th 919 (10th Cir. 2022) (holding that a district court must make individualized determinations based on the applicable statutory criteria before responding to a request to modify a sentence).

As many courts have recognized, mere compliance with the conditions of probation does not warrant early termination. Rather, defendant must show new or unforeseen circumstances, such as exceptionally good behavior, to warrant relief. *See, e.g.*, *United States v. Rusin*, 105 F. Supp. 3d 291, 292 (S.D.N.Y. 2015) ("Early termination of probation is not warranted as a matter of course. Rather, the defendant must show that there is new or unforeseen circumstance, such as exceptionally good behavior. Early termination is not warranted where a defendant did nothing more than that which he was required to do by law." (internal citations and quotation marks omitted)); *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) ("Unblemished" conduct while under supervision cannot alone be classified as "exceptional" and "cannot be sufficient reason to terminate [supervision] since, if it were, the exception would swallow the

rule."); *United States v. Caruso*, 241 F. Supp. 2d 466, 468-69 (D. N.J. 2003); *United States v. Paterno*, No. 99-cr-037 (WGB), 2002 WL 1065682 (D.N.J. Apr. 30, 2002), at *3.

IV.     ANALYSIS

       A.     **Defendant Has Not Demonstrated New or Unforeseen Circumstances that Warrant Early Termination of Probation.**

Defendant's motion fails to raise any new or unforeseen circumstances that warrant early termination of his 18-month term of probation. To the contrary, defendant's motion claims that defendant has merely complied with his conditions of probation, which courts have previously held to be insufficient to warrant relief. Mot. ¶ 1; *see, e.g.*, *Rusin*, 105 F. Supp. 3d at 292. Defendant's motion makes clear that his principal motivation for seeking early termination of probation is to possess a firearm and apply to jobs in law enforcement. Mot. ¶¶ 7, 9.

Significantly, at the time of the attack on the Capitol on January 6, 2021, defendant was not employed or seeking employment in law enforcement. According to his Presentence Investigation Report, after retiring from the Salt Lake City Police Department in 2017, defendant spent five years working as a self-employed financial advisor. PSR ¶¶ 62-64. It is apparent from his motion that defendant is unsure of where he wants to live, much less work. Moreover, it is unlikely that any law enforcement agency would hire an individual who entered the United States Capitol with a violent mob intending to disrupt the certification of the Electoral College vote. And even more unlikely for an individual caught on surveillance footage encouraging a violent attack on police officers. As courts in this District have recognized, the effect of a defendant's probationary status on his ability to gain employment or receive income does not warrant early termination of probation. *See, e.g.*, *United States v. Davis*, No. 2:07-CR-299 TS, 2009 WL 3698385, at *2 (D. Utah Nov. 5, 2009) (finding that the defendant's alleged difficulties in finding

employment and housing as a result of her probationary status "are not sufficient reasons to terminate Defendant's probation").

Finally, defendant's motion illustrates a lack of appreciation of the seriousness of his conduct and resulting harm. While defendant claims that he would never "minimize" his wrongdoing, his motion does just that. Mot. ¶ 4. He describes his conduct simply as "entering the U.S. Capitol and ultimately taking a picture with President Lincoln." *Id.* But defendant did not merely enter the Capitol and take a picture with the bust of Abraham Lincoln. As set forth in detail in the government's sentencing memorandum, the former detective entered the Capital undeterred by evidence he observed of the Capitol's violent breach. The former officer of the law also cheered as rioters violently assaulted and forcefully overcame a line of police officers guarding an entrance to the U.S. Capitol. D.C. ECF No. 35, at 3-12. Instead of leaving after witnessing the violent assault, defendant walked upstairs and entered the Senate gallery. Defendant was one of only a handful of rioters to enter the Senate Gallery; the vast majority of rioters stayed in hallways, the Crypt, or the Rotunda. Furthermore, as defendant himself admitted during an interview with the FBI, he smelled tear gas and saw plumes of smoke in the air as he approached the Capitol on January 6. He saw rioters scaling the scaffolding erected on the west front of the building for the inauguration. Upon approaching the entrance to the Capitol building, he observed shards of glass on the ground and shattered windows. Nothing about the circumstances surrounding the Capitol building would suggest to any law-abiding citizen, much less a former police detective, that defendant could or should enter the building.[1]

---

[1] Since self-surrendering after defendant's arrest, Buhler has maintained that it was defendant who insisted that they enter the Capitol building notwithstanding the violence they witnessed outside the building. In fact, as Buhler explained in a statement to the House January 6 Committee, defendant proclaimed his desire to enter the building after learning from another rioter that Pence had "folded." *See* Wall Street Journal, Watch Live: House Jan. 6 Committee Hearing,

7

Defendant's motion also betrays his failure to accept responsibility. Defendant appears to believe that he was prosecuted "merely for political reasons," rather than for his participation in a violent attack on a seat of government. He does not appreciate the mob's threat to the peaceful transfer of power, the injuries to over one hundred law enforcement officers, or the profound amount of property damage. Mot. ¶ 3. The defendant's failure to appreciate the gravity of his offense and accept responsibility weighs against early termination.

### B.  Early Termination of Defendant's Probation Does Not Serve the Interest of Justice.

Granting defendant's motion for early termination would result in significant sentencing disparities between defendant and similarly situated misdemeanor defendants, including Buhler, and therefore does not serve the interest of justice. 18 U.S.C. § 3553(a)(6); *see also United States v. Yung*, 1998 WL 422795, at *2 (D. Kan. June 12, 1998) (noting that if the court were to terminate the defendant's supervision early, "it would subvert the underlying policy of the Federal Sentencing Reform Act of 1984 to eliminate sentencing disparity among defendants guilty of similar offenses" and that the defendant's role in the conspiracy made him "more culpable than other convicted participants").

Appended as Attachment A is a table providing additional information about sentences imposed on other Capitol breach defendants. As demonstrated by this table, defendant received a very lenient sentence compared to other defendants convicted of violating 40 U.S.C. § 5104(e)(2)(G). In particular, Buhler, who followed defendant inside the Capitol and who self-

---

YouTube, *available at* https://www.youtube.com/watch?v=V9nY48Ncdq0 (58:09-58:35) ("This woman comes up to the side of us and she says, 'Pence folded.' So it was kind of like okay, well, in my mind I was thinking well that's it, you know. Well my son-in-law [Hardin] looks at me and he says, 'I wanna go in.'").

surrendered (unlike defendant) received a sentence of thirty days' incarceration, 36 months' supervised release, and $500 in restitution. Additionally, other rioters who, like Hardin, encouraged (but did not participate in) the breach of the East Rotunda door received more severe sentences, including Frank Scavo (Case No. 1:21-cr-254 (RCL)), who was sentenced to 60 days' imprisonment, and Michael Joseph Rusyn (Case No. 1:21-cr-00303 (ABJ)), who was sentenced to 60 days' home detention, 24 months' probation, and $500 in restitution.

The government strives to be consistent in its sentencing recommendations for all January 6 defendants. Indeed, the government considers a matrix of aggravating and mitigating factors particular to the events that occurred on January 6, including: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated sincere remorse or contrition. Gov't Sentencing Mem. at 13-14. These factors place each defendant on a spectrum as to his fair and just punishment, and are fleshed out in detail in every January 6 sentencing memorandum. The government's evaluation of these factors, combined with its consideration of the § 3553(a) factors, resulted in the government's recommendation of 45 days' incarceration, 36 months' probation, 60 hours of community service, and $500 in restitution for defendant.

V.      CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court deny defendant's Motion.

DATED:   Salt Lake City              Respectfully submitted,
         August 1, 2022
                                     TRINA A. HIGGINS
                                     United States Attorney

                                     By:/s/Carl D. LeSueur
                                     CARL D. LESUEUR
                                     Assistant United States Attorney